UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SIMON CALLENDER,

                              Plaintiff,

        -against-

PANABORI FOOD CORP., d/b/a TINY PIZZA
AND PASTA, and WILLIAM SANCHEZ JR.,

                              Defendants.

16cv7152 (PKC) (DF)

**REPORT AND
RECOMMENDATION**

**TO THE HONORABLE P. KEVIN CASTEL, U.S.D.J.:**

In this action, plaintiff Simon Callender ("Plaintiff") has asserted claims against his

former employers, Panabori Food Corporation, d/b/a Tiny Pizza and Pasta ("Panabori"), and

William Sanchez, Jr. ("Sanchez") (collectively, "Defendants"), for wage-and-hour violations

under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL");

retaliatory termination under the NYLL; and race, color and national origin discrimination, as

well as retaliatory discrimination on the basis of disability, under the New York City Human

Rights Law ("NYCHRL").  After Defendants failed to move, answer, or otherwise respond to

Plaintiff's Complaint, the Honorable P. Kevin Castel, U.S.D.J., entered a default judgment in

Plaintiff's favor, and referred this matter to this Court to conduct an inquest concerning

Plaintiff's damages.  (Dkts. 22, 23).

For the reasons that follow, I recommend that Defendants be held jointly and severally

liable to Plaintiff for damages only on Plaintiff's FLSA and NYLL wage-and-hour claims, in the

amount of $38,551.96, representing $19,275.98 in actual damages for unpaid wages, unpaid

overtime premiums, and spread-of-hours violations, together with another $19,275.98 in

liquidated damages pursuant to the NYLL.  I further recommend that Plaintiff be awarded

prejudgment interest on his actual damages, in an amount to be calculated by the Clerk of the Court from November 23, 2015 (a reasonable midpoint of Plaintiff's employment) to the date of entry of final judgment, and that he be awarded attorney's fees in the amount of $7,784.77, and costs in the amount of $490. Additionally, I recommend that Plaintiff's NYCHRL claims, as well as his NYLL retaliation claim, be dismissed *sua sponte* – the former for lack of subject matter jurisdiction, and the latter for failure to state a claim.

## **BACKGROUND**

### A.   **Factual Background**

Given Defendants' default, the well-pleaded allegations of the Complaint (Complaint, dated Sept. 13, 2016 ("Compl.") (Dkt. 1)), as summarized below, are deemed to be true, except for those allegations relating to damages (*see* Discussion *infra,* at Section III(A)(1)). With respect to Plaintiff's damages claims, this Court also refers to the evidence that Plaintiff has submitted on this inquest in support of those claims, including the Declaration of Delmas A. Costin, Jr., Esq., dated Dec. 6, 2016 ("Costin Decl.") (Dkt. 15); the Supplemental Declaration of Delmas A. Costin, Jr., Esq., dated Mar. 6, 201[7][1] ("Costin Supp. Decl.") (Dkt. 21); the Supplemental Declaration of Simon Callender, dated May 10, 2017 ("Pl. Supp. Decl.")[2] (Dkt. 24-1); and any exhibits annexed thereto.

---

[1] Although this Declaration is actually dated March 6, *2016*, it was filed on March 6, 2017 (*see* Dkt. 21), and this Court assumes that the 2016 date was a typographical error.

[2] Plaintiff also submitted an earlier Declaration (Declaration of Simon Callender, dated Dec. 6, 2016 ("Pl. Decl.") (Dkt. 14), but his Supplemental Declaration is substantively identical, except for portions that have been added, and therefore this Court has only relied on the Supplemental Declaration for purposes of this Report and Recommendation.

## 1.     Facts Underlying Plaintiff's FLSA and NYLL Claims

From May 1, 2015 to June 16, 2016, Plaintiff was employed by Defendants as a dishwasher and a deliveryman, for a restaurant that Defendants operated.  (*See* Compl. ¶¶ 10, 14, 15; *see also* Pl. Supp. Decl. ¶¶ 2, 3, 14.)  Defendant Sanchez hired Plaintiff, determined Plaintiff's schedule, and set Plaintiff's rate of pay.  (Compl. ¶¶ 11-13; Pl. Supp. Decl. ¶¶ 2, 3.)  Plaintiff's duties included washing dishes, delivering food, cleaning the restaurant, manning the cash register, and waiting on tables.[3]  (Compl. ¶ 15; Pl. Supp. Decl. ¶ 4.)

Although Plaintiff does not allege that he was personally engaged in interstate commerce on Defendants' behalf (*see generally* Compl.; Pl. Supp. Decl.), he asserts that Defendants' business generated more than $500,000 in annual revenue, and that Defendants received shipments of food and merchandise from outside of New York State and then used those shipments to prepare food to sell (Compl. ¶¶ 30, 43; Pl. Supp. Decl. ¶¶ 14, 15).

As for his work hours, Plaintiff alleges that he worked different shifts, at different points during his employment, as follows:

> (1)    In May 2015, Plaintiff alleges that he worked an 11-hour shift on Sundays, and 14-hour shifts on Fridays and Saturdays, for a total of 39 hours per week.  (Compl. ¶¶ 17, 18; Pl. Supp. Decl. ¶ 6.)
>
> (2)    From June through December of 2015, Plaintiff alleges that he worked an 11-hour shift on Sundays, a 12-hour shift on Thursdays, a 14-hour shift on Saturdays, and, seemingly, a 14-hour shift on Fridays,[4] for a total of 51 hours per week. (Compl. ¶¶ 19, 20; Pl. Supp. Decl. ¶ 7.)

---

[3] Although the Complaint states that Plaintiff's duties included "waxing on tables," this Court will assume that this was another typographical error, and that Plaintiff intended to state, as he did in his Supplemental Declaration, that his duties included "waiting on tables."

[4] In his Complaint, Plaintiff alleges that, during this period, he worked on Fridays from 11:00 a.m. to 11:00 a.m. (in other words, a 24-hour shift).  (Compl. ¶ 19.)  Then, in his Supplemental Declaration on this inquest, he states that, during this same period, he worked on Fridays from 11:00 p.m. to 11:00 p.m. (again, a 24-hour shift, although a different one).  (Pl.

(3)      From January 2016 to June 16, 2016, Plaintiff worked an 11-hour shift on Sundays, 12-hour shifts on Tuesdays and Wednesdays, and 12.5 hour shifts on Mondays and Thursdays, totaling 60 hours per week. (Compl. ¶¶ 21, 22; Pl. Supp. Decl. ¶ 8.)

Plaintiff claims that, for the entirety of his employment with Defendants, he was paid a flat sum of $250 per week, regardless of the number of hours he worked. (Compl. ¶ 23; Pl. Supp. Decl. ¶ 9.) Plaintiff also claims that Defendants reduced his weekly pay if he arrived to work late, although he provides virtually no specificity in this regard. (Compl. ¶ 24; Pl. Supp. Decl. ¶ 10.)[5] Plaintiff states that he asked Sanchez "to pay his lawful wages and overtime" and that Defendants terminated his employment at some point thereafter. (Compl. ¶¶ 26, 27; Pl. Supp. Decl. ¶¶ 12, 13.)[6]

---

Supp. Decl. ¶ 7.) This Court notes, though, that either of these, if added to his other shifts, would yield a weekly total of 61 hours per week, rather than the 51 hours per week that he is claiming for this time frame. (*See* Background, *supra*, at Section (A)(1).) In the face of these conflicts, this Court will only give Plaintiff credit for 51 hours per week, and will assume that, rather than a 24-hour shift, he meant to describe a 14-hour shift on Fridays.

[5] Plaintiff does not identify the weeks in which his pay was reduced, or any amounts by which his pay was reduced at any time, apart from stating, "[b]y way of example," that $5.00 would be deducted from his pay if he arrived 10 minutes late. (*See* Compl. ¶ 24; Pl. Supp. Decl. ¶ 10.)

[6] Although Plaintiff additionally alleges in his Complaint that, for the duration of his employment, Defendants never provided him with the wage statements or notice required under Sections 195(1) and (3) of the NYLL (Compl., at 10 (Seventh Cause of Action)), these allegations appear to have been cut and pasted from a pleading in another case, as they refer to "Class Members" (*id.* ¶ 78), and this case was not brought as a putative class or collective action. Moreover, in his inquest submissions, Plaintiff does not seek damages for such violations. (*See generally* Plaintiffs' (sic) Memorandum of Law in Support of Plaintiff's Motion for Default Judgment, dated Dec. 6, 2016 ("Pl. Mem.") (Dkt. 16); Costin Supp. Decl.).)

2.      **Facts Underlying Plaintiff's NYCHRL Claims**

In connection with his race, color, and national origin discrimination claim, asserted

pursuant to the NYCHRL, Plaintiff maintains that Sanchez made disparaging comments about

Africans in Plaintiff's presence "almost daily."  (Compl. ¶¶ 32, 34; Pl. Supp. Decl. ¶¶ 16, 18.)

"By way of example," Plaintiff alleges that Sanchez "stated in sum and substance to [Plaintiff:]

(1) Africans are stupid; (2) Africans are lazy; (3) Africans are dumb; (4) Africans are dirty;

(5) Africans are unorganized (sic); and (6) Africans are uneducated."  (Compl. ¶ 33; Pl. Supp.

Decl. ¶ 17.)  Plaintiff states that he is African, and that he told Sanchez to stop making those

statements, as he took offense to them.  (Compl. ¶¶ 35-37; Pl. Supp. Decl. ¶¶ 19-21.)

Plaintiff claims that he was deeply impacted and troubled by Sanchez's comments.

(Pl. Supp. Decl. ¶ 24.)  For instance, he maintains that he had difficulty sleeping as a result of the

comments, and would not be able to sleep until "3AM or 4AM in the morning" after work.  (*Id.*

¶¶ 25, 26.)  Plaintiff further asserts that Sanchez's statements impacted his moods, making him

feel depressed, frustrated, sad, and angry."  (*Id.* ¶¶ 27, 29.)  Plaintiff also asserts that he felt that

this treatment was "unfair," and that he felt "powerless to stop [Sanchez] or to even help

[himself]."  (*Id.*)  He also claims that Sanchez's statements negatively impacted his relationship

with his fiancée (now his wife), as he began to question whether she shared the same beliefs as

Sanchez.  (*Id.* ¶ 28.)  Plaintiff states that he lost 20 pounds while working for Defendants,

developed low self-esteem, and began to feel embarrassed and humiliated.  (*Id.* ¶¶ 30, 32.)  He

further states that he began to feel lethargic and had trouble getting out of bed to go to work or

engage in any other activity.  (*Id.* ¶ 31.)  As of the date of his Supplemental Declaration, Plaintiff

claimed that he still woke up one or two times per week thinking about what Sanchez had said to

him, that he had lower energy levels than before he started working for Defendants, and that he

was exhibiting behavior because of his work for Defendants that was "bringing stress" into his marriage.  (*Id.* ¶ 34.)[7]

### B.   Procedural History

Plaintiff filed his Complaint on September 13, 2016 (Dkt. 1), and he served a Summons and the Complaint on both Defendants on September 15, 2016 (Dkt. 8).  Neither of the Defendants answered, moved, or otherwise responded to the Complaint, and, on November 28, 2016, at Plaintiff's request, the Clerk of Court issued a Certificate of Default. (Dkts. 11, 12.)

On December 6, 2016, Plaintiff filed a motion for entry of a default judgment against Defendants, and also requested that the matter be referred to a magistrate judge for a damages inquest.  (Dkt. 13; *see also* Pl. Decl. (Dkt. 14); Costin Decl. (Dkt. 15); Pl. Mem. (Dkt. 16).) After holding an initial pretrial conference on February 13, 2017, the Honorable P. Kevin Castel, U.S.D.J., ordered Plaintiff to file supplemental submissions in support of his motion by February 27, 2017.  (Dkt. 18.)  After requesting and receiving an extension of time to file his supplemental submissions (Dkts. 19, 20), Plaintiff filed Costin's Supplemental Declaration on March 6, 2017 (Dkt. 21).

On March 24, 2017, Judge Castel granted Plaintiff's motion for a default judgment (Dkt. 23), and referred the matter to this Court for a damages inquest (Dkts. 22, 23).  As Plaintiff's submissions indicated that he was requesting an inquest hearing (*see* Supp. Costin

---

[7] Despite the fact that, as noted above, Plaintiff's Complaint also asserts a state-law claim for disability discrimination and retaliation (*see id.*, at 12 (Ninth Cause of Action) & ¶ 87 ("In violation of N.Y.C. Code § 8-107(7) DEFENDANTS engaged in illegal discrimination on the basis of disability by retaliating against [Plaintiff] when he opposed illegal discrimination by DEFENDANTS")), Plaintiff pleads absolutely no factual allegations related to a disability discrimination or retaliation claim (*see generally id.*), and his inquest submissions do not seek damages on any such claim.

Decl. ¶ 16 ("My client insists on appearing for an inquest to address his mental anguish under the New York State Human Rights Laws[8] and back pay and front pay under both the New York State Labor Law and the New York City Human Rights Law")), this Court then sought to schedule a hearing.  On May 16, 2017, however, Plaintiff's counsel wrote to the Court and stated that Plaintiff was no longer seeking a hearing, and instead had expressed a "preference . . . to have the motion decided on the papers for all matters."  (Dkt. 24.)  This Court granted Plaintiff leave to file further supplemental papers (*see id.*; Dkt. 25), and accepted Plaintiff's Supplemental Declaration (Dkt. 24-1).  To date, neither defendant has filed any opposition to Plaintiff's submissions.

## DISCUSSION

## I.  THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S DISCRIMINATION CLAIMS, WHICH HAVE BEEN ASSERTED ONLY UNDER THE NYCHRL.

As described above, Plaintiff has pleaded a collection of claims in this case, many of which are grounded in state law.  This Court has subject matter jurisdiction over Plaintiff's FLSA claims under 28 U.S.C. § 1331, as those claims arise under federal law.  Plaintiff asserts, in his Complaint, that the Court has supplemental jurisdiction over his NYLL and NYCHRL claims, pursuant to 28 U.S.C. § 1367.  (Compl. ¶ 4.)  This Court agrees, with respect to Plaintiff's NYLL claims (including his claim under that statute for retaliatory discharge), but disagrees that the Court may exercise supplemental jurisdiction over his NYCHRL claims.

When a federal court has original jurisdiction over one or more claims in a case, the court may exercise supplemental jurisdiction "over all other claims that are so related to claims in the

---

[8] Despite this, Plaintiff asserted no claim in his Complaint for any violation of the New York State Human Rights Law ("NYSHRL").  (*See generally* Compl.)

action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C.A. § 1367(a).  A lack of subject matter jurisdiction "may be raised at any time by a party or by the court *sua sponte*," *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000), and, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action," Fed. R. Civ. P. 12(h)(3).  Subject matter jurisdiction may not be waived, and, indeed, a court is "obligated to determine for itself whether it has jurisdiction to adjudicate [p]laintiffs' claims," even where the defendants have defaulted.  *Campbell v. Bank of New York Mellon Tr. Co.*, No. 11cv1588 (CS) (PED), 2012 WL 2952852, at *6 (S.D.N.Y. May 8, 2012), (concluding upon completion of an inquest that the court lacked subject matter jurisdiction over several of the plaintiffs' claims), *report and recommendation adopted*, 2012 WL 2953967 (July 18, 2012); *see also Centra Developers Ltd. v. Jewish Press Inc.*, No. 16cv6737(WFK)(LB), 2018 WL 1445574, (E.D.N.Y. Mar. 23, 2018) (finding, following a damages inquest upon the defendant's default, that certain of the plaintiff's claims should be dismissed for lack of subject matter jurisdiction).

"To constitute the same Article III case or controversy, 'the federal claim and state claim must stem from the same 'common nucleus of operative fact.'" *Thomas v. EONY LLC*, No. 13cv8512 (JPO), 2015 WL 1809085, at *4 (S.D.N.Y. Apr. 21, 2015) (quoting *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir.2011) (internal citations and quotation marks omitted)).  "To determine whether two disputes arise from a 'common nucleus of operative fact,' courts ask whether 'the facts underlying the federal and state claims substantially overlapped . . .  [or] the federal claim necessarily brought the facts underlying the state claim before the court.'" *Morales v. Mw Bronx, Inc.*, No. 15cv6296 (TPG), 2016 WL 4084159, at *4 (S.D.N.Y. Aug. 1, 2016) (quoting *Lyndonville*, 211 F.3d at 704).

Exercising supplemental jurisdiction over state claims "is a favored and normal course of action," if a common nucleus of operative fact exists. *Lyndonville*, 211 F.3d at 704 (internal quotation marks and citations omitted).

In *Morales*, the plaintiffs brought wage and hour claims against the defendants pursuant to the FLSA and NYLL. 2016 WL 4084159, at *1. One plaintiff also brought gender discrimination and retaliation claims against the defendants, which were asserted solely under the NYSHRL and NYCHRL. *Id.* In that case, the court exercised supplemental jurisdiction over the plaintiffs' NYLL wage claims because they arose out of the same set of facts as the relevant FLSA claims, *id.* at *5, but declined to exercise supplemental jurisdiction over the NYSHRL and NYCHRL claims, which, the court found, "involve[d] vastly different and unrelated factual issues" from the plaintiffs' FLSA wage claims, *id.* at *12. In stark contrast to the FLSA claims, which "hinged solely on the number of hours worked, the compensation received, and wage-related notice deficiencies," the gender-based discrimination and retaliation claims were based on allegations that "defendants took an adverse employment action under circumstances supporting an inference of discrimination or retaliation," causing emotional distress. *Id.* While the court noted that it was "equipped to interpret and apply state law where supplemental jurisdiction exist[ed]," it found that it could not do so in the case before it, where the discrimination and retaliation claims "would be based on evidence and information completely unrelated to plaintiffs' wage-related claims." *Id.*

The situation presented here is essentially the same as that presented in *Morales*. In this case, Plaintiff has pleaded two distinct types of claims: (1) wage-and-hour claims under federal and New York law, including a state-law claim that Defendants retaliated against Plaintiff for complaining of wage violations, and (2) discrimination claims based on race, color, and national

origin, brought under local law only.  Plaintiff's NYLL wage claims certainly arise out of the same facts as his federal claims, and the facts underpinning his NYLL retaliation claim substantially overlap with those supporting his wage claims.[9]  Accordingly, the Court has a sound basis for exercising supplemental jurisdiction over Plaintiff's NYLL claims.  On the other hand, the factual allegations underpinning Plaintiff's NYCHRL claims – *i.e.*, allegations that Sanchez made disparaging comments about Africans, causing Plaintiff emotional distress – are wholly and significantly different from those that form the basis for his FLSA claims. Accordingly, I recommend that the Court find that subject matter jurisdiction over Plaintiff's NYCHL claims is lacking, and that those claims be dismissed without prejudice.  *See Morales*, 2016 WL 4084159, at *12.

## II.   PLAINTIFF'S PLEADING DOES NOT ADEQUATELY STATE A CLAIM FOR RETALIATION UNDER THE NYLL.

Where a plaintiff has defaulted, the court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in [his] favor, . . . but it is also required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law."  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *see also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) ("[A] district court has discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action.").  In other words, as a defendant's default only establishes its liability based on the *well-pleaded* allegations of the complaint, *see*

---

[9] At a minimum, Plaintiff's allegation that his employment was terminated after he asked to be paid a lawful wage could support an inference that Defendants did not have a good faith basis for believing that their conduct was in compliance with the FLSA, which could, in turn, be used to support a liquidated damages award under the federal statute.  (*See* Discussion *infra*, at Section III(A)(6).)

*Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 313 (S.D.N.Y. 2014), the fact of the defendant's default does not mean that the court should refrain from scrutinizing the plaintiff's pleading, so as to satisfy itself that the claims are sufficiently pleaded, *see id.* (stating that, "since the allegations in the complaint must be 'well-pleaded,' we are required to examine whether those factual allegations, if deemed true, establish liability." (citing *Finkel*, 577 F.3d at 84)); *see also Centra*, 2018 WL 1445574, at *1 (finding, despite defendant's default, that plaintiff was not entitled to recover damages on pleaded claims that failed as a matter of law); *Greathouse v. JHS Sec. Inc.*, No. 11cv7845 (PAE), 2012 WL 5185591, at *5 (S.D.N.Y. Oct. 19, 2012) (finding, after a damages inquest upon the defendant's default, that the plaintiff was not entitled to damages on an inadequately pleaded FLSA retaliation claim), *vacated and remanded on other grounds*, 784 F.3d 105 (2d Cir. 2015).

In this case, in addition to alleging wage-and-hour violations under the FLSA and NYLL, Plaintiff claims that Defendants retaliated against him under the NYLL for complaining of wage violations.  Even drawing all reasonable inferences in his favor, however, this Court finds that Plaintiff's pleading of this claim is deficient.

To plead a *prima facie* case of retaliatory termination, Plaintiff must allege that, while employed by Defendants, he complained to Defendants about their violation of the NYLL with regard to his wages, and was terminated as a direct result of that complaint.  *See Copantitla*, 788 F. Supp. 2d at 302.  Here, even affording Plaintiff every favorable inference from his pleadings, he has failed to allege facts sufficient for this Court to conclude that Defendants terminated him *because* he complained of an NYLL violation.  The only allegations relevant to the issue of causation are Plaintiff's assertions that (1) he asked Sanchez "to pay [him] lawful wages and overtime" (Compl. ¶ 26; Pl. Supp. Decl. ¶ 12), and (2) that "Defendants terminated

[him] after he asked for his lawful wages and overtime" (*id.* ¶ 27; Pl. Supp. Decl. ¶ 13).  Despite

the fact that Plaintiff argues in his memorandum that "[t]he timing of [Plaintiff's] termination,

which closely coincided with Plaintiff's complaints about his illegally low pay, supports the

inference that he was fired because of his complaints" (Pl. Mem., at 11), the allegations of the

Complaint, even accepted as true, are actually silent on the question of whether these events

"closely coincided."

 This Court also notes that, in his inquest submissions, Plaintiff has offered nothing that

could even arguably be read to fill in this gap in his pleading, merely reiterating in his

Supplemental Declaration that his employment was terminated "after" he complained.  (*See* Pl.

Supp. Decl. ¶ 13.)  While courts may infer causation from the temporal proximity between a

plaintiff's internal complaint and his termination, *see Belizaire v. RAV Investigative & Sec.

Servs. Ltd.*, 61 F. Supp. 3d 336, 355 (S.D.N.Y. 2014), this Court is unable to draw such an

inference here, as Plaintiff has not specified even the approximate date when he allegedly made

his complaint, and thus this Court has no information as to whether he was fired close in time, or

substantially after the complaint was made.

 For these reasons, this Court finds that the well-pleaded allegations of Plaintiff's

Complaint are insufficient to establish Defendants' liability on his NYLL retaliation claim, and

recommends that this claim also be dismissed without prejudice.

## III. DAMAGES THAT SHOULD BE AWARDED ON PLAINTIFF'S FLSA AND REMAINING NYLL CLAIMS

### A. Applicable Legal Standards

#### 1. Default Judgment and Damages

 A "default judgment entered on well-pleaded allegations in a complaint . . . does not

reach the issue of damages." *Bhungalia Family, LLC v. Agarwal*, No. 17cv3568 (JGK), 2018

WL 2976012, at *1 (S.D.N.Y. June 13, 2018) (internal quotation marks and citations omitted.)
In conducting a damages inquest, the Court therefore accepts as true all of the well-pleaded
factual allegations of the complaint, except those relating to damages. *Ferri v. Berkowitz*, 561
Fed. App'x 64, 65 (2d Cir. 2014) (Summary Order) ("Following a default, the court takes as true
the well pleaded allegations in the complaint, but does not assume that the amount prayed for
accurately states damages." (citing *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*,
109 F.3d 105, 111 (2d Cir. 1997)); *Au Bon Pain*, 653 F.2d at 65 (citations omitted).

      Under Rule 54(c) of the Federal Rules of Civil Procedure, any amount awarded on a
default judgment must not "exceed . . . what is demanded in the pleadings."  Fed. R. Civ. P.
54(c). "[T]his does not mean," however, that "Rule 54(c) precludes damages where a complaint
fails to articulate a sum certain in its *ad damnum* clause."  *Pauta v. Aena Mech Corp.*,
No. 11cv6374 (WHP), 2014 WL 3855025, at *1 (S.D.N.Y. July 25, 2014).  Indeed, "[c]ourts
may award damages in the absence of an *ad damnum* clause articulating a sum certain, so long as
those damages do not depart from the type of relief sought in the complaint."  *Id*. at *2 (holding
that damages were properly awarded, where the *ad damnum* clause merely identified types of
damages sought, and a subsequent application for default judgment requested specific dollar
amounts for each type).

      "On an inquest for damages following a default, the plaintiff bears the burden of proof
and must introduce sufficient evidence to establish the amount of damages with reasonable
certainty."  *Gomez v. 4 Runners, Inc.*, No. 14cv8998 (JPO), 2018 WL 1940433, at *2 (S.D.N.Y.
Apr. 24, 2018) (internal quotation marks and citation omitted).  Where a defaulting defendant
has not made any submission on a damages inquest, the Court must assess whether the plaintiff
has provided a sufficient basis for the Court to determine damages, *see Transatl. Marine*, 109

F.3d at 111, and the Court may determine the adequacy of the plaintiff's damages claim based on its submitted proofs alone, *see, e.g.*, *Garden City Boxing Club, Inc. v. Hernandez*, No. 04cv2081 (LAP) (DF), 2008 WL 4974583, at *4-5 (S.D.N.Y. Nov. 24, 2008) (determining the adequacy of plaintiff's damages claim based solely on its submitted proofs where defendant neither responded to plaintiff's submissions with respect to its claimed damages nor requested a hearing). While the Court may hold a hearing to assess the amount of damages that should be awarded on default, *see* Fed. R. Civ. P. 55(b)(2) (court may conduct hearings on damages as necessary), the Second Circuit has consistently held that "[b]y its terms, [Rule] 55(b)(2) leaves the decision of whether a hearing is necessary to the discretion of the district court," *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *accord Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (judges are given "much discretion" to determine whether an inquest hearing need be held); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) (Fed. R. Civ. P. 55(b)(2) "allows but does not require . . . a hearing" (citations omitted)).

### 2.    Burden of Proof in Wage Cases, Where Defendants' Records Are Inadequate or Have Not Been Produced

In an FLSA case, the burden falls on the plaintiff-employee to demonstrate "'that he performed work for which he was not properly compensated.'"  *Santillan v. Henao*, 822 F. Supp. 2d 284, 293-94 (E.D.N.Y. 2011) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded on other grounds by* The Portal-to-Portal Act of 1947, 29 U.S.C. § 251, *et seq.*).  As noted by the Supreme Court, however, employees "'seldom keep . . . records [of hours worked] themselves; even if they do, the records may be and frequently are untrustworthy.'"  *Id*. at 294 (quoting *Anderson*, 328 U.S. at 687) (alteration in original).  Employers, on the other hand, have a duty to maintain such records pursuant to

14

Section 11(c) of the FLSA, and, thus, the "easiest way for an FLSA plaintiff to discharge his or her burden of proof is, generally, to 'secur[e] the production of such records' from the employer." *Id.* (quoting *Anderson*, 328 U.S. at 687) (alteration in original).

A defaulting defendant "deprive[s] the plaintiff of the necessary employee records required by the FLSA, thus hampering [the] plaintiff's ability to prove his damages." *Id.* As a result, where a defendant defaults, a plaintiff may meet his burden of proof "by relying on recollection alone" to establish that he "performed work for which he was improperly compensated." *Id.* at 293-94 (finding, in a default context, that plaintiff provided a "sufficient basis for [the] determination of damages" where he "submitted a sworn declaration containing information as to hours worked and rates of pay based on estimation and recollection," even where the plaintiff's submission was "general and not detailed" (internal quotation marks and citations omitted)). "Moreover, in the absence of rebuttal by defendants . . . [the employee's] recollection and estimates of hours worked are presumed to be correct." *Id.* (internal quotation marks and citations omitted). Under New York law, courts actually "go[] one step further and require[] that employers who fail to maintain the appropriate records 'bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'" *Id*. at 294 (quoting N.Y. Lab. Law § 196-a).

### 3.    Joint and Several Liability of "Employers" Under the FLSA and NYLL

The FLSA imposes liability on "employers," a group that is "broadly define[d] [to include] 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'" *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 342-43 (S.D.N.Y. 2005) (quoting 29 U.S.C. § 203(d)). "The definition of 'employer' is similarly expansive under New York law, encompassing any 'person employing any [employee].'" *Id*. (quoting

N.Y. Lab. Law §§ 2(6)).  To determine whether a party qualifies as an "employer" under both statutes' "generous definitions," the relevant inquiry is "'whether the alleged employer possessed the power to control the workers in question, . . . with an eye to the economic reality presented by the facts of each case.'"  *Id.* (quoting *Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 139 (2d Cir. 1999)).

"[W]hen examining the 'economic reality' of a particular situation," courts will evaluate various factors, none of which, individually, is dispositive.  *Id.*  These factors include "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'"  *Id.* (quoting *Herman,* 172 F.3d at 139).  Further, "'[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, [and is therefore] jointly and severally liable under the FLSA for unpaid wages.'"  *Id.* (quoting *Moon v. Kwon,* 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002), and finding defendants jointly and severally liable under both the FLSA and the NYLL).

In addition, for a corporate defendant to have liability under the FLSA, it must be found to be a "covered enterprise," which includes any enterprise "'whose annual gross volume of sales made or business done is not less than $500,000.'"  *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 941 n.17 (S.D.N.Y. 2013) (quoting 29 U.S.C. § 203(s)(1)(A)(ii)).  In addition, the FLSA "applies only to employees" of such an enterprise "(1) who are personally engaged in interstate commerce or in the production of goods for interstate commerce or (2) who are employed by an enterprise engaged in the production of goods for interstate commerce." *Herrera v. Tri-State Kitchen & Bath, Inc.*, No 14cv1695 (ARR) (MDG), 2015 WL 1529653,

at \*3 (E.D.N.Y. Mar. 31, 2015) (citing 29 U.S.C. §§ 206(a), (b)).  A corporate employer that is a covered enterprise under the FLSA will generally be covered under the NYLL, as well, as "the NYLL does not require . . . that the [corporate employer have] any minimum amount of sales," nor that there be any "nexus with interstate commerce." *Id*. at \*4.  (citations omitted).

### 4.  Damages Available Under the FLSA and NYLL for Minimum Wage and Overtime Pay Violations

Pursuant to the FLSA, an employee must be paid, at least, the federal statutory minimum wage for the first 40 hours that he or she worked in a given work week.  29 U.S.C. § 206(a).  Moreover, an employee is entitled to be paid for overtime hours (*i.e.*, hours exceeding 40 per week), at a "rate not less than one and one-half times the regular rate at which [the employee] is employed." *Id*., § 207(a)(1); *see also, e.g.*, *Chun Jie Yin v. Kim*, No. 07cv1236 (DLI) (JO), 2008 WL 906736, at \*3 (E.D.N.Y. Apr. 1, 2008) (adopting report and recommendation and noting that "[t]he FLSA requires employers to pay their employees the statutory minimum wage as well as a premium (150 percent of the statutory minimum wage) for hours worked above 40 hours per week" (citations omitted)).  A plaintiff with a successful minimum-wage claim under the FLSA is entitled to recover damages up to, but not exceeding, these statutory amounts. *See Santillan*, 822 F. Supp. 2d at 293.  At all times relevant to this action, the federal minimum wage was $7.25 per hour, 29 U.S.C. § 206(a)(1)(C), and the corresponding overtime pay requirement (*i.e.*, 150 percent of that rate) was therefore $10.875 per hour, *see id*.  The FLSA statute of limitations is generally two years, except that, where the employer is found to have committed a "willful" violation of the law, the limitations period is extended to three years. 29 U.S.C. § 255(a).

Under the NYLL, a prevailing plaintiff is entitled to recover "the full amount of wages owed, not just the statutory minimum wage for the hours worked." *Chun Jie Yin*,

2008 WL 906736, at *4; *see also* N.Y. Lab. Law § 198(3) ("All employees shall have the right to recover full wages . . . accrued" within the applicable statute of limitations.). Where, however, a plaintiff-employee was not owed more than the minimum wage, the statutory rates come into play. As is relevant in this action, the statutory minimum wage in New York State was increased to $8.75 per hour as of December 31, 2014, and was increased to $9.00 per hour as of December 31, 2015. N.Y. Lab. Law § 652(1). The NYLL, like the FLSA, mandates payment at 150 percent of the regular hourly rate for each hour worked by an employee in excess of 40 hours per week. 12 N.Y.C.R.R. § 146-1.4. The applicable limitations period for NYLL claims is six years. N.Y. Lab. Law § 663(3).

Although a plaintiff may be "entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the [NYLL], [he or she] may not recover twice." *Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08cv3725 (DC), 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010). Instead, "[w]here a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages." *Wicaksono v. XYZ 48 Corp.*, No. 10cv3635 (LAK) (JCF), 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2011 WL 2038973 (May 24, 2011). Accordingly, when calculating minimum-wage damages, the higher of either the FLSA or the New York minimum wage should be used for any period covered by both statutes. *Wicaksono*, 2011 WL 2022644, at *3.

### 5. Spread-of-Hours Pay Pursuant to the NYLL

Under the NYLL (but not the FLSA), in addition to receiving damages for unpaid regular wages and overtime, an employee is entitled to receive "spread-of-hours" pay, which is "one hour's pay at the basic minimum hourly wage rate" for any workday that lasts longer than

10 hours.  12 NYCRR § 142-2.4(a); *see also* N.Y. Lab. Law §§ 650 *et seq*.  "Spread-of-hours

compensation is calculated by multiplying the minimum wage by the number of days an

employee worked more than ten hours." *Angamarca v. Pita Grill 7 Inc*., No. 11cv7777 (JGK)

(JLC), 2012 WL 3578781, at *8 (S.D.N.Y. Aug. 2, 2012), *report and recommendation adopted*

Dec. 14, 2012 (slip op.).

### 6.     Liquidated Damages Pursuant to the FLSA and NYLL

In addition to allowing recovery for unpaid minimum wages and overtime compensation,

the FLSA provides for the recovery of liquidated damages.  *See* 29 U.S.C. § 216(b).  Under the

statute, a plaintiff is entitled to recover liquidated damages in an amount equal to the amount of

unpaid wages and overtime compensation that the plaintiff was improperly denied, unless the

employer demonstrates that it acted in good faith and had a reasonable basis for believing that it

had not violated the FLSA.  *See id.* (providing that plaintiff-employees who prevail under either

Section 206 or 207 of the FLSA are entitled to recover "the amount of their unpaid minimum

wages, or their unpaid overtime compensation, as the case may be, and . . . an additional equal

amount as liquidated damages"); *see also* 29 U.S.C. § 260 (mandating that an employer pay

liquidated damages unless the employer demonstrates that he was acting in "good faith" and

"had reasonable grounds for believing" that he was not acting in violation of the FLSA); *see also*

*Galeana*, 120 F. Supp. 3d at 317.

"As the Second Circuit has observed, 'the employer bears the burden of establishing, by

plain and substantial evidence, subjective good faith and objective reasonableness. . . .  The

burden, under 29 U.S.C. § 260, is a difficult one to meet, however, and double damages are the

norm, single damages the exception.'"  *See Galeana*, 120 F. Supp. 3d at 317 (quoting *Reich*,

121 F.3d at 71 (other internal quotation marks and citations omitted)); *Cao*, 2010 WL 4159391, at *5; *Yu G. Ke*, 595 F. Supp. 2d at 261; *see also* 29 U.S.C. § 260.

The NYLL also provides for the recovery of liquidated damages on claims for unpaid wages and overtime, as well as unpaid spread-of-hours compensation, *see* N.Y. Lab. Law § 198(1-a), but cumulative liquidated damages under both the FLSA and the NYLL should not be awarded.  *See Rana v. Islam,* 887 F.3d 118, 123 (2d Cir. 2018).  Rather, the plaintiff should again be permitted recovery "under the statute that provides the greatest relief."  *Castillo*, 2016 WL1417848, at *3 (citation omitted); *see also Morales*, 2016 WL 4084159, at *10 (courts awarding damages under only one statute "apply whichever . . . statute results in the higher award for the plaintiff" (collecting cases)).

### 7.     Retaliation Under the NYLL

Under the NYLL, an employer may not retaliate against any employee, including by discharging the employee, because "such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter."  N.Y. Lab. L. § 215(1)(a)(i).  A plaintiff must plead that "while employed by the defendant, [the plaintiff] made a complaint about the employer's violation of the law and, as a result, was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action."  *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F.Supp.2d 253, 302 (S.D.N.Y.2011).

### B.     Defendants' Joint and Severally Liability as "Employers," Pursuant to the FLSA and NYLL

Before reaching Plaintiff's FLSA and NYLL claims, this Court first considers whether Plaintiff has sufficiently demonstrated that the corporate defendant, Panbori, was an enterprise

20

covered by the requirements of the FLSA, and whether Defendants were both Plaintiff's "employers" within the meaning of the federal and state statutes.

As noted above, Plaintiff pleads in his Complaint, and reiterates in his Supplemental Declaration, that Defendants "received shipments of food and merchandise from outside of New York State and then prepared the food for sale." (Compl. ¶ 30; Pl Suppl. Decl. ¶ 14.)  In addition, while Plaintiff merely alleges in his Complaint that, "[u]pon information and belief," Defendants, at all relevant times, "had gross annual revenues in excess of $500,000" (Compl. ¶ 43), he now declares, under penalty of perjury, that his belief in this regard is "based on [his] work on the cash register" (Pl. Supp. Decl. ¶ 15).  Taking the well-pleaded allegations of the Complaint as true in light of Defendants' default, and accepting as unrefuted the assertions made by Plaintiff in his Supplemental Declaration, this Court finds that Plaintiff has adequately shown that Panabori is a covered enterprise under the FLSA.  *See Hart*, 967 F. Supp. 2d at 941 n.17; *Herrera*, 2015 WL 1529653, at *3.

Additionally, Plaintiff has both pleaded and declared that Sanchez is a principal of Panabori; that Sanchez hired him, determined his schedule, and set his rate of pay; and that "Defendants" terminated his employment.  (Compl. ¶¶ 8, 11-13; Pl. Supp. Decl. ¶¶ 2, 3, 13.)  For purposes of this inquest, Plaintiff has thereby shown that three of the four factors of the "economic reality test" weigh in favor of finding both Defendants to have been his "employer": specifically, he has shown that Defendants:  (1) had the power to hire and fire employees, (2) controlled the conditions of his employment, and (3) determined his rate of pay.  *See Doo Nam Yang*, 427 F. Supp. 2d at 342-43.  This is sufficient to establish that both Defendants were Plaintiff's employers for purposes of the FLSA and NYLL, and that, in the context of Defendants' default, they should be held jointly and severally liable for violations of

those statutes.  *See, e.g.*, *Changxing Li v. Kai Xiang Dong*, No. 15cv7554 (GBD) (AJP),

2017 WL 892611, at *22 (S.D.N.Y. Mar. 7, 2017) ("[D]efendants' joint and several liability is

established by the allegations made in the complaint and [the District Judge's] granting of a

default judgment.") (quoting *Chaman LAL Setia Exports Ltd. v. Sawhney,* 00cv2838 (MBM),

2003 WL 21649652 at *4 (S.D.N.Y. May 28, 2003)), *report and recommendation adopted*,

2017 WL 1194733 (Mar. 31, 2017).

### C.   Damages For Plaintiff's Minimum <br> Wage, Overtime, and Spread-of-Hours Claims

As a threshold matter, this Court finds that Plaintiff's written submissions are sufficient

to meet his burden of proof to establish damages, such that a hearing on such damages is not

required.  *See Fustok*, 873 F.2d at 40 (noting that the district court has the discretion to determine

whether a hearing is necessary.   As noted above, in the context of a default, where the

defendant has neither provided any employment records, nor otherwise rebutted the plaintiff's

damages claims, it is sufficient for a plaintiff to rely on his "recollection alone" to establish the

hours he worked and the rates he should have been paid.  *Santillan*, 822 F. Supp. 2d at 294

(internal quotation marks and citation omitted).  In this case, the well-pleaded factual allegations

presented in the Complaint, as well as Plaintiff's Supplemental Declaration, set out Plaintiff's

recollections regarding the hours he worked and the rates of pay he earned.  (Compl. ¶¶ 40-47;

Pl. Supp. Decl. ¶¶ 5-10).)

Plaintiff states that the period of his employment by Defendants began in May 2015

(Compl. ¶ 14; Pl. Supp. Decl. ¶ 2), which was less than two years before he filed suit, in

September 2016 (*see* Dkt. 1).  The period of his employment therefore falls within the limitations

periods of both the FLSA, which allows claims going back for two years generally, and for three

years where the employer's actions were willful, *see Santillan*, 822 F. Supp. 2d at 297, and the

NYLL, which has a six year limitations period, regardless of a finding of willfulness, N.Y. Lab. Law § 663(3).  As set out above, however (*see* Discussion *supra*, at Section III(A)(4)), Plaintiff may not recover for unpaid minimum wages and overtime under both statutes, but rather is entitled to recover damages under whichever statute affords him the greater relief.  Here, the New York minimum wage was higher than the federal minimum wage for the duration of Plaintiff's employment.  *Compare* 29 U.S.C. § 206(a)(1)(C) (applicable federal minimum wage was $7.25 per hour) *with* N.Y. Lab. Law § 652(1) (New York minimum wages in 2015 and 2016 were $8.75 and $9.00 per hour, respectively).  Accordingly, Plaintiff should be awarded damages for any unpaid minimum wages or overtime only under the NYLL.

### 1.   May 2015

This Court accepts as true Plaintiff's assertion that he was paid $250 per week for the entirety of his employment.[10]  (Compl. ¶ 23; Pl. Supp. Decl. ¶ 9.)  Assuming that this was intended to cover the first 40 hours of Plaintiff's employment, this weekly pay would have translated to a base rate $6.25 per hour.[11]  In May 2015, however, when Plaintiff first began working for Defendants, he contends that he worked only 39 hours per week.  (*See* Compl. ¶¶ 17-18; Pl. Supp. Decl. ¶ 6; Costin Supp. Decl. ¶ 11.)  Dividing his flat weekly payment of $250 by 39 hours per week yields a base rate of $6.41 per hour – which is still below

---

[10] While Plaintiff maintains that, if he arrived at work late, Defendants reduced his pay, he has not provided sufficient detail in this regard to enable the Court to modify its damages calculations to account, with reasonable certainty, for such reductions.  (*See supra*, at n.5.)

[11] "[U]nder NYLL, the [hourly] rate of pay of an employee in the hospitality industry (which includes restaurants) is calculated by dividing the employee's total weekly earnings, . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week."  *Java v. El Aguila Bar Rest. Corp.*, No. 16cv6691 (JLC), 2018 WL 1953186, at *10 (S.D.N.Y. Apr. 25, 2018) (internal quotation marks and citation omitted); *see also* 12 N.Y.C.R.R. § 146-3.5(b) (codifying presumption).

the New York State minimum wage of $8.75 per hour that was in effect at that time.

Accordingly, Plaintiff has demonstrated that he was paid below the state minimum wage in the

first month of his employment.

The difference between $341.25 (the weekly pay to which he was entitled, calculated as

$8.75/hour x 39 hours) and $250 (the weekly pay he actually received) was $91.25 per week.  As

May (a month of 31 days) has approximately 4.43 weeks, Plaintiff, based on the NYLL

minimum wage requirements alone, was underpaid by approximately $404.24 (*i.e.*, $91.25 x

4.43) for the month of May 2015.[12]

Plaintiff also contends that he is entitled to spread-of-hours pay for May 2015, which he

did not receive.  He asserts that, in that month, he worked more than 10 hours per day, on

Fridays, Saturdays, and Sundays.  This Court takes judicial notice of the fact that there were 15

Fridays, Saturdays, and Sundays in May 2015.  At $8.75 per day, that translates to $131.25.[13]

In total, Plaintiff has reasonably demonstrated that he is entitled to **$535.49** in minimum

wage plus spread-of-hours damages, under the NYLL, for the month of May 2015.

---

[12] In the calculations that Plaintiff has submitted, he apparently made the error of assuming that May has 30 days, rather than 31.  (*See* Pl. Mem., at 8 (estimating that there are 4.285714 weeks in May, which, mathematically, would be based on a 30-day month).) Accordingly, his requested damages for May 2015 are somewhat (although not materially) different than those calculated herein.

[13] Plaintiff's submitted damages calculations arrive at a different figure, by using a more approximate methodology.  Specifically, Plaintiff estimates the number of days that he worked in May 2015 by multiplying 3 days per week by an estimated number of weeks in the month (again, erroneously assuming that May had 30 days).  This Court finds that, for a period as short as one month, this type of approximation is unnecessary, as looking at a calendar for that month, and counting the number of Fridays, Saturdays, and Sundays that actually fell in the month, yields a far more precise outcome.

### 2.   June 2015 Through December 2015

Plaintiff asserts that, from June through December of 2015, he worked over 10 hours per day, four days per week, for a total of 51 hours per week.  (Compl. ¶¶ 19, 20; Pl. Supp. Decl. ¶ 7; Costin Supp. Decl. ¶ 11.)  For each of those weeks, Plaintiff was entitled to have been paid the New York State minimum wage of $8.75 per hour for the first 40 hours of the week (for a total, for those first 40 hours, of $350 per week), and $13.125 per hour (*i.e.*, "time and a half") for the remaining 11 hours (for a total, for the overtime hours, of $144.375 per week).  Overall, prior to any spread-of-hours pay, Plaintiff was therefore entitled to receive $494.375 per week (*i.e.*, $350 + $144.375), but he was only paid $250 per week, an underpayment of $244.375 per week.  Over the course of the approximately 30.57 weeks in this period,[14] this resulted in a total underpayment of approximately $7,470.54 (*i.e.*, $244.375/week x 30.57 weeks), which he is entitled to recover here.

In addition, this Court finds that Plaintiff is entitled to recover spread-of-hours pay for this period in the amount of $35 per week (*i.e.*, $8.75 per day, for each of the four days per week that he worked over 10 hours), which, over approximately 30.57 weeks,[15] would have totaled $1,069.95.

---

[14] This Court has calculated the approximate number of weeks from June through December by first determining that the period included 214 days (with June, September, and November each consisting of 30 days, and July, August, October, and December each consisting of 31 days), and then dividing that total number of days by 7.  This Court notes that Plaintiff used a somewhat different method of estimating the number of weeks in the period, yielding an estimate of 30.28571 weeks.  (*See* Pl. Mem., at 8.)  Again, this difference is not material.

[15] *See supra*, at n.14.

In total, this Court finds that Plaintiff is reasonably entitled to an award under the NYLL of **$8,540.49** in unpaid minimum wages, overtime premiums, and spread-of-hours compensation, for the period from June through December, 2015.

### 3.  January 2016 Through June 16, 2016

Plaintiff asserts that, from January through June 16, 2016, he worked over 10 hours per day, five days per week, for a total of 60 hours per week.  (Compl. ¶ 21, 22; Pl. Supp. Decl. ¶ 8; Costin Supp. Decl. ¶ 11.)  For each of those weeks, Plaintiff was entitled to have been paid the then-applicable New York State minimum wage of $9.00 per hour for the first 40 hours of the week (for a total, for those first 40 hours, of $360 per week), and $13.50 (time and a half) per hour for the remaining 20 hours (for a total, for the overtime hours, of $270 per week).  Thus, aside from any spread-of-hours pay, Plaintiff was entitled to receive $630 per week (*i.e.*, $360 + $270) for this period, but he was only paid $250 per week, an underpayment of $380 per week. Over the course of the 24 weeks in this period,[16] this resulted in a total underpayment of $9,120 (*i.e.*, $380/week x 24 weeks), which Plaintiff is now entitled to recover.

As for spread-of-hours pay for this period, Plaintiff is entitled to recover an additional $1,080, representing $45 per week (*i.e.*, $9.00 per day, for each of the five days per week that he worked over 10 hours), for 24 weeks.

In total, this Court finds that Plaintiff is reasonably entitled to an award under the NYLL of **$10,200** in unpaid minimum wages, overtime premiums, and spread-of-hours compensation, for the period from January 2016 through June 16, 2016.

\*   \*   \*

---

[16] There were 168 days in this period (including 31 days in January, 29 in February, 31 in March, 30 in April, 31 in May, and 16 in June), which (divided by 7) translates to exactly 24 weeks.

26

For Plaintiff's entire period of employment, this Court finds that he is entitled to recover **$19,275.98** (*i.e.*, $535.49 (for May 2015) + $8,540.49 (for June-December 2015) + $10,200 (for January-June 16, 2-16) from Defendants, for violations of the NYLL minimum-wage, overtime, and spread-of-hours requirements.

### D.   Liquidated Damages Pursuant to the NYLL

In accordance with precedent holding that liquidated damages may not be recovered under both the FLSA and NYLL, *see e.g. Rana,* 887 F.3d at 123, Plaintiff appropriately seeks liquidated damages only under state law (Costin Supp. Decl. ¶ 12).  The NYLL provides for a liquidated damages award equal to 100 percent of the plaintiff's actual damages, "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law."  N.Y. Lab. Law §§ 198(1-a), 663(1).

As Defendants have defaulted, and have not submitted any evidence to suggest they had a good faith basis for believing that their actions regarding Plaintiff's wages were in accordance with the law, this Court recommends that Plaintiff be awarded **$19,275.98** in liquidated damages, equaling 100 percent of Plaintiff's actual damages on his claims for minimum-wage, overtime, and spread-of-hours violations.

### E.   Prejudgment Interest

Plaintiff seeks prejudgment interest on any amounts awarded under the NYLL.  (Costin Supp. Decl. ¶ 13.)  The NYLL expressly provides that courts "shall" allow a prevailing plaintiff to recover prejudgment interest.  N.Y. Lab. Law 198(1-a).  Under the state law, "[p]rejudgment interest is calculated . . . on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law." *Mejia v. East Manor USA Inc.*, No. 10cv4313 (NG), 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013) (citation omitted), *report and*

*recommendation adopted*, 2013 WL 2152176 (May 17, 2013).  The appropriate interest rate is nine percent per annum, *Najnin v. Dollar Mountain, Inc.*, No. 14cv5758 (WHP), 2015 WL 6125436, at *4 (S.D.N.Y. Sept. 25, 2015); *see also* N.Y.C.P.L.R. §§ 5001, 5004, and may be calculated from either the "earliest ascertainable date the cause of action existed" or "from a single reasonable intermediate date," where damages were incurred at various times, N.Y.C.P.L.R. § 5001(b).  It is within the Court's "'wide discretion'" to "'determin[e] a reasonable date from which to award prejudgment interest.'"  *Alvarez v. 215 N. Ave. Corp.*, No. 13cv7049 (NSR), 2015 WL 3855285, at *3 (S.D.N.Y. June 19, 2015) (quoting *Conway v. Icahn & Co.,* 16 F.3d 504, 512 (2d Cir. 1994)).

Plaintiff proposes using an intermediate date to calculate prejudgment interest, "which is the halfway point of Plaintiff's employment:  November 23, 2015."  (Costin Supp. Decl. ¶ 14.) This Court finds Plaintiff's methodology to be reasonable, and recommends that prejudgment interest on Plaintiff's NYLL actual damages (**$19,275.98**) be awarded at a rate of nine percent per annum, to be calculated by the Clerk of Court, from November 23, 2015 to the date final judgment is entered.

## IV.   ATTORNEYS' FEES AND COSTS

### A.   Applicable Legal Standards

"Under both the FLSA and the NYLL, a prevailing plaintiff may recover her reasonable attorney's fees and costs."  *Najnin*, 2015 WL 6125436, at *4; s*ee* 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a).  The Court has discretion to determine the amount of attorneys' fees that would be appropriate to satisfy a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  As a general matter, the "starting point" in analyzing whether claimed attorneys' fees are appropriate is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours

required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)

(lodestar calculation creates a "presumptively reasonable fee" (internal quotation marks omitted;

citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of

Elections*, 522 F.3d 182, 183 (2d Cir. 2008), and *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542

(2010)).  The party seeking fees bears the burden of demonstrating that its requested fees are

reasonable, *see Blum v. Stenson*, 465 U.S. 886, 897 (1984), and must provide the Court with

sufficient information to assess the fee application, *New York State Ass'n for Retarded Children,

Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

"[T]he most critical factor in determining the reasonableness of a fee award is the degree

of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992).  "'A district court's

assessment of the degree of success achieved in a case is not limited to inquiring whether a

plaintiff prevailed on individual claims,' and '[b]oth the quantity and quality of relief obtained,

as compared to what the plaintiff sought to achieve . . . are key factors in determining the degree

of success achieved.'" *Sanchez v. I&A Rest. Corp.*, No. 14cv0726 (DF), 2017 WL 2537814, at

\*6 (S.D.N.Y. May 22, 2017) (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132,

152 (2d Cir. 2008).)  Where a counseled plaintiff achieves only a modest degree of success, "a

reduction of the fees may well be appropriate." *Java v. El Aguila Bar Rest. Corp.*, No. 16cv6691

(JLC), 2018 WL 1953186, at \*13 (S.D.N.Y. Apr. 25, 2018).

An attorney's hourly rate is considered reasonable when it is "in line with those [rates]

prevailing in the community for similar services by lawyers of reasonably comparable skill,

experience, and reputation." *Blum*, 465 U.S. at 895 n.11.  Although the fee applicant has the

burden of demonstrating prevailing market rates for comparable work, *see Broome v. Biondi*,

17 F. Supp. 2d 230, 237 (S.D.N.Y. 1997), the Court may also apply its "own knowledge" of rates

charged in the community in assessing the reasonableness of the rates sought, *Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987).  When an attorney's requested hourly rate is higher than rates found to be reasonable in the relevant market, it is within the Court's discretion to reduce the requested rate.  *See Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).

Where the requested amount of fees is excessive because the number of stated hours is greater than that which should have been required for the work produced, the Court should reduce the stated hours accordingly.  *See Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d 477, 487 (2d Cir. 2002) (the time component should not reflect excessive hours).  In determining whether an excessive amount of time was expended on the matter, the Court may consider, *inter alia*, the nature and quality of the work submitted by counsel in connection with the litigation, *see Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987), as well as "the straightforward nature of the work performed [and] the relative simplicity of the issues involved," *see Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp.*, No. 13cv3061 (JGK), 2014 WL 2624759, at *6 (S.D.N.Y. June 10, 2014) (citations and internal quotations omitted).

A prevailing plaintiff who is entitled to an attorneys' fee award is also entitled to recover "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (internal quotation marks and citation omitted).  Recoverable costs may include, *inter alia*, filing fees and reasonable process server fees.  *Rosendo v. Everbrighten Inc.*, No. 13cv7256 (JGK) (FM), 2015 WL 1600057, at *9 (S.D.N.Y. Apr. 7, 2015), *report and recommendation adopted*, 2015 WL 4557147 (July 28, 2015).

### B.    Amount of Attorneys' Fees and Costs That Should Be Awarded

Plaintiff seeks $13,823 in attorney's fees (Costin Supp. Decl. ¶ 15), plus $490 in costs (Pl. Mem., at 24; Costin Decl., Ex. E).  For the reasons that follow, I recommend that Plaintiff be awarded attorneys' fees in the reduced amount of $7,784.77, together with the entire amount of the requested costs.

### 1.    Degree of Success

As a preliminary matter, this Court notes that, should the Court adopt this Report and Recommendation and dismiss Plaintiff's discrimination and retaliation claims, Plaintiff's success in this action will be limited as a result.  Even though Plaintiff will have succeeded in securing a judgment that awards him damages, those damages will only remedy Defendants' wage-and-hour violations, and will not compensate Plaintiff for injury from any alleged discriminatory or retaliatory conduct.[17]  Rather, if the Court agrees with the reasoning herein, Plaintiff's discrimination and retaliation claims will fail based on two fundamental legal errors:  (1) a failure to establish subject matter jurisdiction over Plaintiff's NYCHRL claims, and (2) a failure to allege facts sufficient to establish a core element of his NYLL retaliation claim.

(*See* Discussion, *supra*, at Sections I and II.)

---

[17] Plaintiff sought $20,000 in liquidated damages on his NYLL retaliation claim. (Pl. Mem., at 11.)  In conjunction with his NYCHRL discrimination and retaliation claims, Plaintiff did not request a specific award, but plaintiffs who have prevailed on such claims in this Court have been awarded as much as $125,000 in damages for even "garden variety" mental anguish, *see Emamian v. Rockefeller Univ.*, No. 07cv3919 (DAB), 2018 WL 2849700, at *16 (S.D.N.Y. June 8, 2018) ("In garden variety emotional distress claims, the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury. Garden variety emotional distress claims generally merit $30,000.00 to $125,000.00 awards." (internal quotation marks and citations omitted)), in addition to back pay and front pay, *see e.g. Johnson v. Strive E. Harlem Employment Grp.*, 990 F. Supp. 2d 435, 456 (S.D.N.Y. 2014).

In actions where plaintiffs have prevailed on their FLSA and NYLL claims, but not on their discrimination claims, courts have found a "general lodestar reduction of 10% [to be] appropriate to reflect the lack of complete success." *Song v. 47 Old Country, Inc.*, No. 09cv5566 (LDW) (SIL), 2015 WL 10641286, at *6 (E.D.N.Y. Oct. 1, 2015) (internal quotation marks and citations omitted), *report and recommendation adopted*, 2016 WL 1425811 (Mar. 31, 2016).  In line with this precedent, this Court recommends applying a 10 percent reduction in Plaintiff's requested fees, and will incorporate that 10 percent reduction into its lodestar calculation, as shown below.

### 2.    Reasonable Rates

Plaintiff seeks to recover attorneys' fees only for the work of attorney Delmas A. Costin, Jr., Esq. ("Costin"), at the rate of $400 per hour, and legal assistant Raquel Urena ("Urena"), at the rate of $100 per hour.  (Costin Supp. Decl. ¶ 17; Pl. Mem., at 20-21.)

Although Costin makes no statements about the level of his experience in either his initial or supplemental Declarations, he does include such information in the legal brief he filed on Plaintiff's behalf, in support of the default motion.  (*See* Pl. Mem., at 18-19.)  While the Court could disregard those statements as non-evidentiary in nature, this Court notes that Costin did sign the brief, thereby certifying to the Court that the statements made therein had evidentiary support.  *See* Fed. R. Civ. P. 11(b)(3).  So as to consider Costin's proposed billing rate fairly, this Court will consider his representations regarding his qualifications, even though not properly presented.   On this point, Costin represents that he began practicing law in New York in 1999, as an Assistant District Attorney in the Office of the Bronx District Attorney (Pl. Mem., at 18); that he left that office in 2005 to become associated with the law firm of Gordon & Silber P.C.

(*id.*); that, from 2006 to 2007, he was associated with the law firm of Holm & O'Hara (*id*.), and that, since 2007, he has been a solo practitioner (*id*). Costin also represents that, since 2011, his practice has focused on employment discrimination and wage-and-hour cases; that he has made presentations on employment law to bar associations and community groups; and that he has "handled scores of cases involving claims of employment discrimination[,] as well as wage and benefit claims[,] that ended in favorable settlements for his clients." (*Id*., at 18-19.)

Costin also argues, in the brief he filed on Plaintiff's behalf, that his requested rate should not be reduced merely because he is in solo practice, stating that "where a solo practitioner performs partner-level tasks, he or she is entitled to be compensated as such." (*Id*., at 17.) To justify his requested rate of $400 per hour, he cites cases from this district in which courts have awarded rates of up to $400 or $450 per hour, for partners with substantial experience in wage-and-hour law, or labor and employment law generally. (*See id*.)

In assessing the prevailing market rates "for similar services by lawyers of reasonably comparable skill, experience, and reputation" *Blum*, 465 U.S. at 895 n.11, this Court notes that hourly rates of $400 or higher have, in fact, been approved in this District for highly experienced litigators in wage-and-hour cases, *see Pastor v. Alice Cleaners*, *Inc.*, No. 16cv7264 (JLC), 2017 WL 5625556, at *7 (S.D.N.Y. Nov. 21, 2017) ("courts in this District have determined in recent cases that a fee in the range of $250 to $450 is appropriate for experienced litigators in wage-and-hour cases" (collecting cases)); *see also Portillo v. New Ko-Sushi Japanese Rest., Inc.*, No. 16cv2429 (JMF), 2017 WL 3995602, at *1 (S.D.N.Y. Sept. 8, 2017) (reducing hourly fee of named partner at small firm specializing in wage and hour disputes to $400).

Nonetheless, in reviewing counsel's submitted time records this Court notes that, while certain of the work performed by Costin was at a partner level, the majority of the work he

performed was not.  Indeed, Costin performed a substantial amount of work that could have been performed by a more junior attorney, such as legal research; drafting of pleadings, a legal brief, and correspondence; overseeing service of process; preparing damages calculations; and reviewing court rules.  "Courts frequently reduce fee requests where work that could have been handled by more junior lawyers was instead performed by a senior partner."  *Union Cent. Life Ins. Co. v. Berger*, No. 10cv8408 (PGG), 2013 WL 6571079, at *6 (S.D.N.Y. Dec. 13, 2013) (collecting cases).  While this Court recognizes that, as a solo practitioner, Costin may not have had the ability to assign certain work to a more junior attorney, this does not mean that Plaintiff is entitled to recover attorneys' fees at the upper end of the scale for partner-level work, where most of the legal work performed on the case did not require partner-level expertise.

This Court also notes that Costin's work on this matter reflected numerous instances of inattention or carelessness – such as cut-and-pasted allegations in the Complaint that did not appear to apply to this case (*see supra*, at n.6); asserted claims with little or absolutely no pleaded factual support (*see id.*; *see also supra*, at n.7; Discussion at Section II(E)); a referenced statute under which Plaintiff had pleaded no claim (*see supra*, at n.8); and inconsistent assertions regarding the hours that Plaintiff worked, with stated totals that did not account for the stated hours (*see supra*, at n.4) – all of which make it less appropriate for the Court to approve a billing rate for Costin at the upper level of what has been awarded in this District.  For these reasons, I recommend that Costin's requested hourly rate be reduced to $300 per hour, for purposes of the lodestar calculation in this case.

In addition, attorneys are typically compensated at 50 percent of their reasonable hourly rates for hours spent traveling in connection with litigation.  *See, e.g., Barfield*, 537 F.3d at 139; *see also K.F. v. New York City Dep't of Educ.*, No. 10cv5465 (PKC), 2011 WL 3586142, at *6

34

(S.D.N.Y. Aug. 10, 2011), *amended by*, 2011 WL 4684361 (S.D.N.Y. Oct. 5, 2011).  In this case, Costin's time records show that, for November 28, 2016 and February 13, 2017, he billed a total of 1.45 hours for traveling in connection with this case.  (Supp. Costin. Decl., Ex. 2, at 2.)  I recommend that, for those hours, Costin's fees be awarded at the rate of $150 per hour.

Plaintiff does not provide any information at all regarding Urena's experience as a legal assistant to support her proposed $100 per hour billing rate.  (*See* Pl. Mem., at 21.)  While some courts in this District have approved paralegal rates of $100 per hour for work in wage-and-hour cases, *see, e.g.*, *Montalvo v. Arkar Inc.*, No. 17cv6693 (AJN), 2018 WL 2186415, at *2 (S.D.N.Y. May 10, 2018), a paralegal rate $75 per hour has also been found to be reasonable for this type of case, *see, e.g.*, *Gomez v. Bogopa Madison LLC*, No. 17cv5006 (RA), 2017 WL 6594226, at *4 (S.D.N.Y. Dec. 21, 2017).  Given the lack of support for the rate proposed here, and that Plaintiff has the burden of demonstrating that the requested fees are reasonable, I recommend that Urena's rate be reduced slightly, to $75 per hour, for purposes of the lodestar calculation.

### 3.    Reasonable Hours

Plaintiff has submitted documentation showing that Costin spent 25.07 hours and Urena spent 17.95 hours working on this case.  (Costin Supp. Decl., Ex. 2.)  In addition, Plaintiff requests that the Court's fee computation include an additional five hours of attorney time, which, he contends, "is the amount of time [he] expect[s] it will take to collect on the judgment." (Costin Supp. Decl. ¶ 15.)

This Court finds that the time reflected in the submitted billing records was not excessive for the needs of this case, and was reasonable.  Accordingly, I recommend that the full amount of time shown in those records be included in the lodestar calculation.  I do not recommend,

however, that an additional five hours of time be included for the time that Costin *may* additionally have to expend to enforce the judgment.  Plaintiff has submitted no authority to support the proposition that his fee award should cover not only the fees that have been reasonably incurred to date, but also those fees that, hypothetically, may need to be incurred in the future.  As speculation and guesswork cannot support a fee award, the judgment should not reflect time beyond that actually demonstrated by counsel's contemporaneous time records. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hartel*, 782 F. Supp. 22, 24 (S.D.N.Y. 1992) (prevailing plaintiff was "not entitled to $2,000 in estimated attorneys' fees which it [might have] incur[red] in enforcing the judgment [as] [t]his type of expense is not customarily reimbursed"), *aff'd sub nom.*, *Nat'l Union Fire v. Carlie*, 972 F.2d 1328 (2d Cir. 1992); *see Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010) (stating "unequivocally[,] that absent unusual circumstances attorneys are required to submit contemporaneous records with their fee applications").

### 4.   Lodestar Calculation

Based on the foregoing, this Court calculates the lodestar in this case as follows:

| Timekeeper | Reasonable Rates | | Reasonable Hours | | Total |
|---|---|---|---|---|---|
| Costin | $300/hr | x | 23.62 | = | $7,086.00 |
| Travel time | $150/hr | x | 1.45 | = | $217.50 |
| Urena | $75/hr | x | 17.95 | = | $1,346.25 |
| | | | | Subtotal | $8,649.75 |
| | | | Less 10% for degree of success | | - $864.98 |
| | | | | Total | $7,784.77 |

Other than adjusting the fee award for degree of success, as shown above, this Court finds no other basis for adjusting the lodestar, and therefore recommends that Plaintiff be awarded attorneys' fees in the amount of **$7,784.77.**

### 5.     Costs

Plaintiff also seeks $490 in litigation costs, consisting of a $400 filing fee and $90 process server fee.  (Costin Decl., Ex. E.)  This Court finds that the documentation provided by Plaintiff in support of these fees is adequate, that the costs were reasonably incurred, and that these costs, in the total amount of **$490**, should therefore be awarded.  *See e.g. Rosendo*, 2015 WL 1600057, at *9 (awarding filing fees and reasonable process server fees).

## CONCLUSION

Based on the foregoing, I respectfully recommend that upon Defendants' default, Plaintiff be awarded the following, as against both Defendants jointly and severally:

(a)     Actual damages in the amount of $19,275.98, based on Defendants' violations of the NYLL minimum wage, overtime, and spread-of-hours requirements;

(b)     Liquidated damages in the amount of $19,275.98, pursuant to the NYLL;

(c)     Pre-judgment interest on Plaintiff's actual damages (of $19,275.98), to be calculated by the Clerk of Court, at the rate of nine percent per annum, from November 23, 2015 to the date of entry of final judgment;

(d)     Attorneys' fees in the amount of $7,784.77; and

(e)     Costs in the amount of $490.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be

filed with the Clerk of Court, with courtesy copies delivered to the chambers of the

Honorable P. Kevin Castel, United States Courthouse, 500 Pearl Street, Room 1020, New York,

New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl

Street, Room 1660, New York, New York, 10007. Any requests for an extension of time for

filing objections must be directed to Judge Castel. FAILURE TO FILE OBJECTIONS WITHIN

FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL

PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-*

*CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d

298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v.*

*Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
      July 11, 2018

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

Copies To:

Hon. P. Kevin Castel, U.S.D.J.

Plaintiff's counsel (via ECF)

Mr. William Sanchez, Jr., CEO
Panabori Food Corp. d/b/a Tiny Pizza
1113 Grant Avenue
Bronx, New York 10462

Mr. William Sanchez, Jr.
1660 Zenega Avenue
Bronx, New York 10462

38